# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| XODUS MEDICAL INC., et al.<br><br>v.<br><br>G&T INDUSTRIES, INC. | CIVIL ACTION<br><br>NO. 16-5850 |

### MEMORANDUM RE: MOTION TO DISMISS, TRANSFER, OR STAY

**Baylson, J.**                                                                                                       **July 24, 2017**

### I. Introduction

In this patent infringement case, Xodus Medical Inc., a Pennsylvania corporation ("Xodus"), Alessio Pigazzi ("Pigazzi"), and Glenn Keilar, residents of California ("Keilar," and collectively, "Plaintiffs") allege that G&T Industries, Inc., a Delaware corporation with a principal place of business in Michigan ("Defendant" or "G&T"), infringed on Plaintiffs' patent, namely United States Patent No. 9,161,876 ("the '876 patent"), which is a "device and method for positioning an[d] maintaining a position of a patient undergoing surgical procedures involving an inclined, declined or otherwise tilted position."[1] (ECF 1, Complaint, "Compl." 11)

Before the Court is Defendant's motion to:

(1) Dismiss the case, pursuant to Federal Rule of Civil Procedure 12(b)(3), for lack of venue; or

(2) Transfer the case to the United States District Court for the Western District of Pennsylvania ("W.D.P.A."), pursuant to either the first-filed rule or under the doctrine of *forum non conveniens*; or

---

[1] The '876 patent is a so-called "child patent" of United States Patent Nos. 8,511,314 ("the '314 patent") and 8,464,720 ("the '720 patent"), which, as discussed below, are currently the subject of litigation in the Western District of Pennsylvania.

1

(3) Stay this case pending reexamination of the patent-in-suit by the United States Patent and Trademark Office ("USPTO").[2]

(See ECF 15-1 Defendant's Memorandum of Law in Support of Motion to Dismiss, Transfer or Stay, "Def.'s Mot."). On April 17, 2017, Plaintiffs filed an Opposition to Defendant's Motion (ECF 16, "Pls.' Opp'n"), to which Defendant filed a Reply on April 24, 2017 (ECF 17, "Def.'s Reply").

For the following reasons, Defendant's Motion to transfer this case to the W.D.P.A. will be GRANTED.

## II. Factual Background

On September 18, 2013, Plaintiffs filed an action in the W.D.P.A. (the "2013 W.D.P.A. action") against Prime Medical LLC ("Prime"), and its distributor, Symmetry Surgical Inc. ("Symmetry"), alleging that Prime and Symmetry infringed the '314 patent and the '720 patent. (Def.'s Mot. at 1).

On November 10, 2016, Plaintiffs filed a second action in the W.D.P.A. (the "2016 W.D.P.A. action") against Prime and Symmetry, alleging that they had infringed the '876 patent, which is a continuation (or so-called "child patent") of the '314 and the '720 patents. (Id. at 2). Prime and Symmetry filed answers and counterclaims in that case, asserting non-infringement and the invalidity of the '876 patent. The parties in both actions have filed a joint motion for a temporary stay, pending the outcome of reexamination proceedings, initiated by a third party, of the '314, '720, and '876 patents, which are currently pending before the USPTO. (Id. at 3-4).

---

[2] A patent reexamination happens when a third-party requests that a patent examiner verify that the subject matter it claims is patentable. Here, the '876 patent is being reexamined in conjunction with both '314 and the '720 patents.

2

On November 9, 2016—a day before Plaintiffs filed the 2016 W.D.P.A. action—Plaintiffs filed the instant Complaint, alleging infringement of the '876 patent by Defendant, G&T. (Compl. ¶¶17, 20, 23, 26, 28-41).

According to the Complaint, the parties have the following relationships. Xodus is the exclusive licensee of the '876 patent. Prime "markets and sells a knockoff patient positioning system to hospitals at roughly half the price[.]" (Compl. ¶ 14). G&T exclusively "manufactures those devices for Prime, and sells the manufactured devices to Prime." (Id.).

G&T is a Delaware corporation with its principal place of business in Michigan, and a "facility" in Reading, Pennsylvania. (Def.'s Reply at 2-3).

### III. Discussion

#### a. Transfer Is Warranted based on the First-Filed Rule

##### i. Applicable Law

"The First-Filed Rule requires that, absent extraordinary circumstances, cases sharing *substantially similar* subject matter and subject to concurrent federal jurisdiction be decided by the court where the litigation was first filed." Synthes, Inc. v. Knapp, 978 F. Supp. 2d 450, 455 (E.D. Pa. 2013) (emphasis added). Substantial similarly is "not limited to mirror image cases where the parties and the issues perfectly align." Id.; see also Maximum Human Performance, Inc. v. Dymatize Enter, Inc., 09-cv-235, 2009 WL 2778104, at *3 (D.N.J. Aug. 27, 2009) ("[T]he issues and parties involved in the two actions need not be identical."). The central question when considering whether to make an exception to the first-filed rule is what best serves "considerations of judicial and litigant economy, and the just and effective disposition of disputes." Elecs. For Imaging, Inc. v. Coyle, 394 F.3d 1341, 1347 (Fed. Cir. 2005).

3

"Although its application is typically the norm, the first-filed rule is not applied rigidly." EEOC v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988). Departure from the first-filed rule can be justified by the presence of exceptional circumstances, which may include convenience and availability of witnesses; absence of jurisdiction over all necessary parties; possibility of consolidation; or considerations relating to the real party in interest. Futurewei Techs., Inc. v. Acacia Research Corp., 737 F.3d 704, 708 (Fed. Cir. 2013).

When the first-filed rule is invoked in the context of patent infringement litigation, the district court is governed by law from the Federal Circuit. See Coyle, 394 F.3d at 1345-1346.

### ii. Parties' Contentions

Defendant argues that there is "substantial overlap" of subject-matter and defendants between the instant action and the two W.D.P.A. actions, such that the first-filed rule requires transfer of the instant action to the W.D.P.A. (Def.'s Mot. at 9-8 (citing Synthes, Inc., 978 F. Supp. 2d at 457)). In support, Defendant argues that in all three actions, Plaintiffs assert infringement of "essentially the same patented subject matter" and "the accused products are the same." (Id.). As proof of the overlap, Defendant points to several fact, namely:

(1) That the USPTO is currently undergoing a joint reexamination proceeding of the '314, '720 and '876 patents, based on the fact that substantial new questions affecting the validity of the patent claims have been raised. (Def.'s Mot. at 3; Ex. G).

(2) That the USPTO issued a Double Patenting Rejection of the '876 patent on the basis that its claims were not patentably distinct from the claims of the parent '314 and '720 patents. (Id. at 2).

(3) As a result of the Double Patenting Rejection, Pigazzi and Keilar submitted a "Terminal Disclaimer," in which they disclaimed any term of the '876 patent that would extend beyond the terms of the '314 and '720 patents. (Id.).

(4) Defendant anticipates asserting identical counterclaims in response to Plaintiffs' allegations of infringement of the '314, '720, and '876 patents in this case as Prime and Symmetry did in the W.D.P.A. actions (id. at 9); and

4

(5) Prime and Symmetry have entered into a joint defense agreement with G&T. (Def.'s Reply at 4).

Additionally, as explained above, Defendant argues that the parties—G&T, Prime and Symmetry—are all "highly related" due to the distribution relationships between them, notwithstanding the fact that G&T is not a named defendant in the W.D.P.A. actions. (Def.'s Mot. at 9).

Defendant further argues that there are no "exceptional circumstances" that would justify an exception to the first-filed rule in this case.[3] That is, there is no allegation that Plaintiffs first filed in the W.D.P.A. in bad faith or due to any kind of gamesmanship. To the contrary, Defendant argues, Plaintiffs' decision to file an action in the E.D.P.A. the day before filing its second action in the W.D.P.A. reveals "Plaintiffs' intent in the timing of these filings . . . to artificially separate [Defendant's] defense efforts from those of Prime and Symmetry, requiring [Defendant] to defend itself against Plaintiffs' allegations in this Court while Prime and Symmetry are forced to defend themselves against the same allegations in [the W.D.P.A.]." (Id. at 10).

Last, Defendant argues that requiring it to litigate this dispute in both this District and the W.D.P.A. would invite the very problems that the first-filed rule is designed to avoid— duplicative expense, a waste of judicial resources, and the possibility of conflicting judgments. (Id. at 11).

---

[3] Citing EEOC, 850 F.2d at 976, Defendant identifies 6 applicable exceptions to the first-filed rule: (1) the existence of rare or extraordinary circumstances; (2) the first-filer engaged in inequitable conduct; (3) the first-filer acted in bad faith; (4) the first-filer engaged in forum shopping; (5) the later-filed action has developed further than the first-filed action; and (6) the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in a less favorable forum. (Def.'s Mot. at 10). None of the exceptions apply here.

Plaintiffs argue, by contrast, that the application of the first-filed rule is inapposite in this case because the first-filed action in this case (the 2013 W.D.P.A. action) is "currently [] not pending" because it is stayed, pending the outcome of the USPTO reexamination proceedings. (Pls.' Opp'n at 9).

Plaintiffs further argue that a finding of substantial overlap is undermined by the fact that the two W.D.P.A. actions have not yet been consolidated, and that Judge Schwab, who is presiding over the September 18, 2013 W.D.P.A action, was unwilling to accept the assignment of the 2016 W.D.P.A. action. (Id.).

Last, relying on Futurewei and Google, Inc. v. Rockstar Con sortium U.S. LP, 13-cv-5933, 2014 WL 1571807, at *9 (N.D. Cal. Apr. 17, 2014), Plaintiffs argue that the relationship between the parties (G&T being Prime's manufacturer, and Symmetry being Prime's distributor) is not sufficiently "similar" to trigger the first-filed rule. (Pls.' Opp'n at 9). There, the Federal Circuit held that the substantially similar threshold was satisfied, for purposes of the first-filed rule, where the parties were a patent owner, its exclusive licensee, and licensee's wholly-owned subsidiary. In Google, the Northern District of California distinguished Futurewei from the case before it, holding that the first-filed rule did not apply because the "substantially similar" test, with respect to the similarity of the defendants, was not met where the parties were a "manufacturer and customer," and "not in privity." Google, 2014 WL 1571807, at *9.

### iii. Analysis

The Court finds that the claims and parties in the instant action are "substantially similarly," such that transfer to the W.D.P.A. is warranted under the first-filed rule. Preliminarily, the Court rejects Plaintiffs' argument that the fact that the 2013 W.D.P.A. action—

6

the indisputably first-filed action—is "stayed" means that it cannot serve as the first-filed action in this analysis. That contention is illogical and unsupported by any case law. (Def.'s Mot. at 9).

Additionally, as Defendant articulates, judicial efficiency is best served by transferring this case to the W.D.P.A., where it can be consolidated with the pending W.D.P.A. cases involving essentially the same dispute. Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1299 (Fed. Cir. 2012). While Plaintiffs put emphasis on the fact that the two W.D.P.A. actions have not been consolidated, there is no allegation that consolidation was requested and refused. And, even if those two actions are not consolidated, it is still likely that the instant action, which involves only the '876 patent, will be consolidated with the 2016 W.D.P.A. action, as it also involves the alleged infringement of the '876 patent.

The Court further finds, despite Plaintiffs' contention, that the manufacturer/distributor relationship between Defendant and Prime does not foreclose the application of the first-filed rule. Unlike in Google, the Defendant and Prime *are* "in privity," and "G&T supplies the accused products *exclusively* to [Prime]." (Def.'s Reply at 1). Also, the court in Google did not rely on the tenuousness of the relationship as its reason for refusing to transfer the case; rather, it noted that '[e]ven if the parties were substantially similar in [both actions], the costumer-suit exception to the first-to-file rule would apply." Google, 2014 WL 1571807, at *9 (emphasis added). Under this exception, when the first-filed suit is brought by a customer and the later-filed suit is a declaratory judgment action brought by a manufacturer of the accused devices, the later-filed suit is permitted to proceed because the manufacturer "presumably has a greater interest in defending against charges of patent infringement than the customers[.]" Id. at *9.

Here, there is no exception that would justify a departure from the application of the first-filed rule. See Elecs. for Imaging, 394 F.3d at 1347-1348. Unsurprisingly, since the same

7

Plaintiffs brought both actions, they do not argue that there was any nefarious reason for initially filing the W.D.P.A. actions in that district. Nor do they argue that, like the Google case, the plaintiffs that filed the instant action has any greater interest in defending against charges of patent infringement than the plaintiffs that filed the W.D.P.A. actions (because Plaintiffs are identical in all three actions).

### b. In the Alternative, Transfer is Warranted pursuant to 28 U.S.C. 1404(a)

#### i. Applicable Law

The Court next considers whether transfer to the W.D.P.A. is alternatively appropriate pursuant to 1404(a), and finds that it is.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Supreme Court has explained that the purpose of § 1404(a) is to vest district courts with broad discretion to "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Regional circuit law concerning transfer under § 1404(a) applies in the context of patent infringement cases. Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 836 (Fed. Cir. 2003).

Three elements are required to prevail on a motion for transfer of venue:

(1) The case could have been brought in the first instance in the proposed transferee forum[4];

(2) The proposed transfer will provide greater convenience to the parties and witnesses; and

---

[4] While Plaintiffs state in their Opposition that it is "noteworthy that G&T provides no evidence that venue would have been proper in the [W.D.P.A.]," there is no meaningful dispute that the W.D.P.A. is an appropriate forum for this action. (Pls.' Opp'n at 12-13).

8

(3) The proposed transfer will be in the interest of justice.

See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). In Jumara, the Third Circuit identified a set of private interest (factor 2) and public interest (factor 3) factors that are appropriate to account for in this analysis. The private interest factors to consider include:

> (1) [The] plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora [,] and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)[.]

Id. (internal citations omitted). The public interest factors to consider include:

> (1) [T]he enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, . . . and (6) the familiarity of the trial judge with the applicable state law in diversity cases[.]

Id. at 879-80 (internal citations omitted).

### ii. Parties' Contentions

Defendant argues that the private and public interest factors weigh in favor of transfer to the W.D.P.A. Specifically, it argues that Plaintiffs' choice of forum is not entitled to deference in this case because the E.D.P.A. is neither Plaintiffs' home forum nor the situs of the alleged infringements. Defendant's preference for litigating this dispute in the W.D.P.A., by contrast, is based on its geographical proximity to Byron Center, Michigan, which is where its headquarters are located. Defendant argues that the W.D.P.A. is clearly the more convenient forum, since it is where Plaintiffs have already instituted two actions.

As for the public interest factors, Defendant argues that transfer is more expeditious because it will likely be consolidated with at least one of the already-pending W.D.P.A. actions,

which will conserve judicial resources, and serves the interests of justice by avoiding potentially inconsistent results. QVC, Inc. v. Patiomats.com, LLC, No. 12-3168, 2012 WL 3155471, at *5 (E.D. Pa. Aug. 3, 2012).

Plaintiffs, by contrast, argue that their choice of forum is entitled to "at least some deference," and that the E.D.P.A. has a stake in the controversy because Defendant has a registered place of business here (in Reading, Pennsylvania), and also because some "infringement activity" allegedly took place here. (Pls.' Opp'n at 13-15). Additionally, Plaintiff argues that Defendant's claim that the instant case would likely be consolidated with one or both of the W.D.P.A. cases is mere speculation. As evidence, Plaintiffs point to the fact that Judge Schwab, the Judge presiding over the 2013 W.D.P.A. action, declined to accept assignment of the 2016 W.D.P.A. action, and that neither party has moved for consolidation of those two cases. (Id. at 9). Finally, Plaintiffs argue that Defendant's argument about the efficiencies of litigating all three cases in the W.D.P.A. is based upon convenience for the various defendants' *counsel*, which is shared (see Def.'s Reply at 2), rather than for Defendant itself.

### iii. Analysis

The Court concludes that transfer is also appropriate in light of the § 1404(a) analysis. As for the private interest factors, the Court agrees that Plaintiffs' choice of forum (factor 1) is entitled to little weight in this case because it is not Plaintiffs' home forum. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum, . . . the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable."). Defendant's preference for and consent to adjudication of the dispute in the W.D.P.A., however (factor 2), is entitled to some weight in favor of transfer. (Def.'s Reply at 8). The Court finds Plaintiffs'

argument that the E.D.P.A. is a convenient forum for Defendant based on the fact that it has a place of business here immaterial in light of the fact that (1) Defendant has consented to adjudication in the W.D.P.A., and (2) as Defendant clarifies, it has "not operated a facility in Montgomery County, PA [which is in the E.D.P.A.] since at least 1994." (Def.'s Reply at 2).

With respect to convenience of the parties, witnesses and evidence (factors 4, 5, and 6), it is hard to see how W.D.P.A. would not be both a more convenient and a more efficient forum, since W.D.P.A. is (1) closer to Defendant's headquarters, where the "majority of G&T's evidence and witnesses" is located; and (2) the district in which Plaintiffs' headquarters, counsel, and the majority of their evidence and witnesses are located. (Def.'s Reply at 10-12).

The public interest factors also weigh in favor of transfer to the W.D.P.A, predominately because of the "practical consideration[]" of consolidation of the three pending actions that "could make the trial easy, expeditious, or inexpensive." Jumara, 55 F.3d at 879. Numerous courts in this district have held that a strong likelihood of consolidation warrants a transfer of venue; in fact, this consideration is so important that it can weigh in favor of transfer even when other Jumara factors indicate the opposite. See Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009). Here, there is a strong likelihood of consolidation of this action with one or both of the already-pending W.D.P.A. actions because, *inter alia*, (1) the '876 patent is merely a continuation of the patents at issue in the 2013 W.D.P.A. action; and (2) the 2016 W.D.P.A. action involves the exact patent as the one at issue here.

Accordingly, as Defendant put it, transfer of this action to the W.D.P.A. will facilitate the avoidance of "duplicative efforts for both the parties and courts in the Eastern and Western Districts." (Def.'s Reply at 2).

11

## IV. Conclusion

In light of the foregoing memorandum, the Court finds that this case should be transferred to, and proceed in, the W.D.P.A, where there is no dispute that venue is proper.  The Court need not decide at this time whether venue is improper in the District.  The Court therefore need not determine what if any impact the recent Supreme Court decision in <u>TC Heartland, LLC v. Kraft Foods Group Brands LLC</u>, 137 S.Ct. 1514 (2017)–which relates to venue in patent infringement actions and was decided after this motion was fully briefed—has on whether venue would be proper in this District.

The Court also notes that it need not consider Defendant's alternative ground for transfer, pursuant to the doctrine of *forum non conveniens*, which is inapposite here because no party to this action is foreign (<u>see</u> Pls.' Opp'n at 10 (citing <u>Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 430 (2007)).

Accordingly, Defendant's motion will be GRANTED with respect to transfer to the W.D.P.A.

An appropriate Order follows.

O:\Jessica.2016\16-cv-5850, Xodus v. G&T Industries\Memo Re Motion to Transfer.docx

12

Case 3:18-cv-00415-JPM-JEM   Document 18   Filed 07/24/17   Page 12 of 12
PageID #: 219